Willie Mae McNAMARA, Appellant,

v.

Gimone HALL, Appellee.

No. C14–83–417CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 28, 1984.

William C. Rice, Jr., Houston, for appellant.

James Patrick Smith, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from the order of Probate Court No. 2 of Harris County denying probate of a copy of the will of Timothy Louis McNamara, deceased. Appellant, Willie Mae McNamara, was the wife of the deceased and proponent of the will. The Probate Court improperly assigned Appellant the burden of rebutting the presumption that the Original Will had been revoked by the deceased. We therefore reverse and render judgment for Appellant.

The deceased, Timothy L. McNamara, executed his will on July 13, 1981. At that time he was married to the Appellant, Willie Mae McNamara. Appellant filed a photocopy of that will for probate. Appellee, the daughter of the deceased by a previous marriage, contested the probate of the photocopy of the will.

On July 7, 1981, McNamara had surgery to remove a cataract from his left eye. He was released from the hospital on the 10th of July. Dr. Joel Goffman, McNamara's opthalmologist, testified to McNamara's poor visual acuity, and to his orders to wear non-prescription sun glasses at all times for six weeks after the surgery.

McNamara's original will was prepared for him by his attorney, Hallie Gill. This will was executed by McNamara before three witnesses and notarized on July 13, 1981. On that same day, McNamara's step-daughter, Beverly Joan Harpold, drove McNamara to a "Kwik-Kopy" copying center. There McNamara had *two* perfect photocopies made of his executed original will. Harpold then drove McNamara home.

At home, McNamara and Harpold went to the office McNamara maintained at home. In the office, McNamara produced three envelopes. He also set out the three wills, the executed original will and the two perfect photo copies. McNamara separately initialled each page of the original will and the two copies, then took the original will and two copies and put one each into three envelopes he had set out.

The first envelope addressed to Hallie Gill was sealed and stamped by McNamara. The second envelope addressed to Appellee was sealed and stamped by McNamara. The third envelope was marked "Will" and was sealed by McNamara. McNamara gave the first and second envelopes, addressed to Gill and Appellee, to Harpold and told her to mail them. Harpold testified that she mailed the envelopes.

On July 29, 1981, McNamara asked Harpold to drive him to his bank, the Bank of Houston, so that he could place his will in his safety deposit box. He had the third envelope, marked "Will," with him at this time. The records of the Bank of Houston show that McNamara entered his safe deposit box on July 29, 1981, and at no time thereafter. The next recorded entry of the safe deposit box by any person was by Appellant on May 4, 1982, after the death of McNamara, when the envelope marked "Will" was removed.

The first envelope, addressed to Gill, was received in his office and the document inside stamped with the mark "Duplicate Original." That will was one of the two perfect photocopies. The second envelope and enclosed document, addressed to Appellee, was not accounted for at trial. The third envelope, marked "Will," was recovered by Appellant from McNamara's safe deposit box at the Bank of Houston. Inside that envelope marked "Will" was a perfect photocopy, not the original.

Appellant offered into probate the copy of the original will recovered from McNamara's safe deposit box. During the non-jury trial, Appellant produced evidence that the two photocopies were the only copies made of McNamara's will. Appellant presented testimony as to how the three envelopes were labeled or addressed. Appellant also established that Gill received a photocopy and that a photocopy was found

in the safe deposit box. Appellant did not produce the original executed will; however, Appellant could not produce the will that was contained in the envelope addressed to Appellee. Further, Appellee did not appear at that time. There was testimony that the deceased had told others he had provided for the Appellant in his "will" and that his "will" was in his safe deposit box. At the end of Appellant's evidence, the trial judge ruled that Appellant failed to rebut the presumption of revocation and entered an order denying probate of the copy of McNamara's will.

 Appellant's first point of error is that the court erred when it placed the burden on Appellant to rebut the presumption that the original will had been revoked. Where a validly executed will was last seen or accounted for in the possession of the testator, or when he had ready access to it when last seen, failure to produce the original after the death of the testator raises the presumption that it was destroyed by him with the intent of revoking it. *Berry v. Griffin*, 531 S.W.2d 394 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); *Mingo v. Mingo*, 507 S.W.2d 310 (Tex.Civ. App.—San Antonio 1974, writ ref'd n.r.e.). Appellant does not dispute that general rule, but she argues that based on these facts it does not apply. The two facts which trigger the presumption of revocation are that the original will was within the possession or control of the testator when last seen, and that after the death of the testator the original cannot be accounted for. Appellant argues that the original will was not last seen in the possession of the testator and that the presumption of revocation did not arise.

In Finding of Fact No. 8, the trial judge stated that: "The original of the purported Last Will and Testament of TIMOTHY LOUIS MCNAMARA was last seen in the possession of the Decedent...." The clear and undisputed evidence is to the contrary. The original executed will and the two photo copies were put into envelopes. One envelope was marked "Will" and was placed in McNamara's safe deposit box. However, that envelope contained one of the two photocopies of the will. McNamara gave the other two envelopes to Harpold to mail to Gill and Appellee. Since there were only two photocopies and an original, and one of the two photocopies was in the safe deposit box, the original will had to be in one of the two envelopes given to Harpold. Mr. Gill produced the other copy of the will and testified that he received it in the mail from McNamara. Appellee failed to appear and testify at the trial. There is no evidence of what was in the envelope Appellee received from McNamara. The logical and reasonable conclusion is that the original will was in the envelope addressed to Appellee. The trial court erred in finding that the original was last in the possession of McNamara. Appellant's point of error one is sustained.

The judgment of the trial court is reversed and it is rendered that the application for probate of the photocopy of the will is granted.