**Annie HOPPE, Appellant,**

v.

**Johnnie E. HOPPE, Appellee.**

**No. C14–85–078–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 7, 1985.

Rehearing Denied Dec. 5, 1985.

Patrick J. Dyer, Joseph J. Halbach, Jr., of Bonham, Carrington & Fox, Houston, for appellant.

Jerry K. Atkins, of Jerry K. Atkins & Associates, Houston, for appellee.

Before JUNELL, ROBERTSON and CANNON, JJ.

## OPINION

JUNELL, Justice.

This is an appeal from a judgment denying probate to a copy of the "lost" will of Martha Hoppe, deceased. Appellant is the daughter of the deceased and proponent of the will. Appellant claims in seventeen points of error that the probate court erred in denying probate of the will because there was no, or insufficient, evidence that the will was last seen in the possession of Martha Hoppe or that her will had been revoked at the time of her death. Appellant also claims the probate court erred in its submission of the special issue on possession as such constituted an impermissible double submission. We find the probate court erred in disregarding the jury's answer to Special Issue No. 2, and reverse and render judgment.

On September 3, 1971, Martha Hoppe executed a will in the presence of her attorney. Mrs. Hoppe died on September 5, 1979. On January 5, 1983, appellant filed an application to probate the will and to issue letters testamentary. The will was not produced in court because, according to appellant, the will was last seen in the possession of Mrs. Hoppe's attorney and was lost, misplaced or destroyed by the attorney or his employees. On February 21, 1983, appellee filed a will contest alleging that Mrs. Hoppe died intestate because appellant had not proved the existence of a valid, unrevoked will as required by the Texas Probate Code. The suit proceeded to trial. At the conclusion of the evidence, appellant moved for a directed verdict, which was denied. Special issues were then submitted to the jury, which found in Special Issue No. 1 that the will was last seen in the possession of Martha Hoppe or in a place where she had ready access to it, and in Special Issue No. 2 that the will had not been revoked at the time of her death. The trial court then granted appellee's motion to disregard the finding in Special Issue No. 2, denied appellant's motion to disregard the finding in Special Issue No. 1, and denied probate of the will.

In points of error one and three through eight, appellant contends the trial court erred (1) in denying her motion for instructed verdict, (2) in submitting to the jury Special Issue No. 1, (3) in overruling her motion to disregard the jury's answer to Special Issue No. 1, and (4) in overruling her motion for new trial. All of these points of error allege there was no evidence, or insufficient evidence, that the will was last seen in the possession of Martha Hoppe or in a place where she had ready access to it.

█ Section 88 of the Texas Probate Code provides that to obtain probate of a will, the proponent must prove to the satisfaction of the court that the will was not revoked by the testator. Tex.Prob.Code Ann. § 88 (Vernon 1980). The recognized rule in this state is that where a validly executed will was last seen in the possession of the decedent or in a place where the decedent had ready access to it, and it can not be found after his death, the presumption arises that the testator destroyed it with the intention to revoke it. The burden is then on the proponent to prove that the testator did not revoke it. Such a presumption does not arise, however, when the will was last seen in the possession of some person other than the testator. *Aschenbeck v. Aschenbeck*, 62 S.W.2d 326, 327 (Tex.Civ.App.—Austin 1933, writ dism'd).

During the trial Donald Slatten testified that he was Mr. and Mrs. Hoppe's attorney and that he prepared their wills and they executed them on September 3, 1971. He testified that the Hoppes had expressed very clearly their desire that appellant receive all they owned once both had died. Slatten testified that he placed the wills and two copies of each into the office vault along with an index card, for organizational purposes, stating their names, date of execution and witnesses to the wills. He further testified that he never saw the will again and that although he saw Mrs. Hoppe in his office many times after the execution of their wills, she never mentioned the will again. He stated the will was in the vault when he left the practice in 1973, and that the vault had a lock to which only the office personnel had a key.

John Jones, an attorney, testified that he suffered a stroke in May of 1971, after which Mr. Slatten arrived to help with Mr. Jones' office practice. Mr. Jones stated that the stroke affected his memory even after his return to the office in late 1971 or early 1972. He stated that he always tells clients that they are free to take their wills at any time. He testified he doesn't remember if Mrs. Hoppe ever came to his office, and doesn't remember ever seeing her will but that he would not have destroyed it. He also stated that he periodically discards index cards for those people who had picked up their wills. Although several examples of the index cards used by the law office were admitted into evidence, there was no introduction of or further testimony on the cards prepared for the Hoppes.

The appellee testified that after Mrs. Hoppe's death, he and the appellant went to Mr. Jones' office to settle her estate, and Mrs. Hoppe's will was not presented. Appellee testified that Mr. Jones said he looked for her will but none was found except Mr. Hoppe's. This testimony conflicts with that of appellant, who stated that when she and appellee went to Mr. Jones' office, he went into the vault and returned with a blue-backed legal document similar to the one she saw Mrs. Hoppe execute years earlier. Appellant stated that Mr. Jones held up the document and said it was Mrs. Hoppe's will. Appellant further testified that she always accompanied her mother to the law office because Mrs. Hoppe was physically ill for many years, and that on those visits she never saw Mr. Jones give Mrs. Hoppe her will.

Appellant contends the trial court erred in accepting the jury's finding on the issue of possession because the evidence establishes as a matter of law that the will was in the possession of Mr. Jones or his office when last seen, or alternatively that the evidence was insufficient to support such a finding. Appellant relies on Mr. Slatten's

testimony that the will was placed in his vault and was there when he left the office, as well as appellant's testimony that she saw the will in Mr. Jones' hand after Mrs. Hoppe's death, to prove that the will was not in Mrs. Hoppe's possession when last seen. Appellant also cites Mr. Slatten's testimony that the vault was locked with the key available only to Mr. Slatten, Mr. and Mrs. Jones and the office secretary to prove that Mrs. Hoppe did not have "ready access" to her will as contemplated by certain case law. *See Thompson v. Dobbs,* 234 S.W.2d 939 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n.r.e.). In *Thompson* the court addressed the question of whether the delivery by the testatrix of her will to a scrivener for safekeeping should be construed to mean the will when last seen was either in possession of the testatrix or was accessible to her so as to invoke the presumption of revocation. The court held that the will was not in the possession of the testatrix based on the particular facts of the case, and stated that in order for the will to have been in her possession or to have been accessible to her, it would have been necessary for her to have free access to the scrivener's office together with a key to the office so that she could come and go from the place of business at will. The court further distinguished cases involving safety deposit boxes in which the boxes were under the supervision of the testators. Appellant contends that the same standard should be applied here since Mr. Slatten drew the will and kept it in the vault, presumably for safe-keeping. However, in *Thompson* a period of less than two years passed between the time the will was drawn and the testatrix died and there was no evidence the testatrix visited the scrivener again; here the time period was eight years and there was testimony that Mrs. Hoppe visited the law office on numerous occasions, both before and after her husband died. Appellant contends, however, that just because Mrs. Hoppe *could* have asked for her will on those visits does not amount to evidence that she did so, and that such an interpretation is too broad. Appellant also relies on *Citi-*

*zens First National Bank of Tyler v. Rushing,* 433 S.W.2d 741 (Tex.Civ.App.—Tyler 1968, no writ), for its proposition that possession "is that condition of facts under which one can exercise his power over a corporeal thing at his pleasure to the exclusion of all other persons." *Id* at 745.

■ This court is not convinced that the trial court erred in refusing to disregard the jury finding in Special Issue No. 1 that the will was last seen in the possession of Martha Hoppe or in a place where she had access to it. Other court decisions have not imposed so narrow a definition on the terms "possession" and "ready access." *See Davis v. Roach,* 138 S.W.2d 268 (Tex. Civ.App.—Austin 1940, writ dism'd judgmt cor.), in which the court applied the presumption of revocation where the testator placed the will in a safety deposit box; the box was found after the testator's death but not the will. The court held that the testator had possession or access to the will because "all testator had to do to get actual physical possession of the box containing the will was to ask [the banker] or any employe of the bank for it." *Id.* at 270. *See also Carter v. Massey,* 668 S.W.2d 450 (Tex.App.—Dallas 1984, no writ), in which the court held that a life insurance policy, although not actually within the insured's physical possession since the group policy was actually retained by the employer, was indeed under the insured's control and therefore legally within his possession.

These cases prevent this court from holding that Mrs. Hoppe, as a matter of law, did not have possession of, or access to, her will. In addition, there was sufficient evidence for the jury to find that she did so.

We therefore hold that the trial court did not err in refusing to disregard the jury's answer to Special Issue No. 1 and overrule points of error one and three through eight.

In points of error two and nine through fourteen, appellant alleges the trial court erred (1) in denying her motion for instructed verdict, (2) in submitting to the jury Special Issue No. 2, (3) in granting appellee's motion to disregard the jury's answer

to Special Issue No. 2, and (4) in overruling her motion for new trial as there was no evidence, or insufficient evidence, that Martha Hoppe's will had been revoked at the time of her death.

Having found that the trial court properly accepted the jury's answer on the issue of possession or access, we now turn to the issue of whether appellant overcame the presumption of revocation raised by the answer to Special Issue No. 1. The trial court held in its judgment that Special Issue No. 2 was improperly submitted as a matter of law since the jury found that Martha Hoppe's will was last seen in her possession or in a place where she had ready access to it, which raises the presumption that she revoked it prior to death. However, the presumption of revocation is not conclusive and may be rebutted; and if rebuttal testimony is offered, then a question of fact exists which is to be presented to the jury. *In re Estate of Caples*, 683 S.W.2d 741, 743 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Only if there was no evidence to support the jury's finding that the will had not been revoked at the time of Martha Hoppe's death could the trial court correctly have disregarded the finding.

Appellant contends that no revocation was established as a matter of law, or alternatively that the evidence of no revocation was sufficient to support the jury's finding that the will had not been revoked. Appellee argues that the special issue was properly disregarded because there was no evidence presented at all on the issue of revocation, or alternatively that any evidence presented was not clear and convincing.

To overcome the presumption of revocation, evidence of a clear and convincing nature must be produced that the will was not revoked. This standard requires that the evidence should not be ambiguous, equivocal, or contradictory and that it be sufficient to carry conviction to an unbiased and unprejudiced mind. *Berry v. Griffin*, 531 S.W.2d 394, 396 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

Appellant gave the following testimony at trial:

Q. Did you go see John Jones after your mother died?

A. Yes. sir.

Q. How soon after she died?

A. I couldn't tell you the exact time.

Q. Would it have been a couple of weeks?

A. Yes, sir.

Q. What did you go there for?

A. To have that will recorded.

Q. Who went with you?

A. Johnnie.

Q. Did you ask Mr. Jones about your mother's will?

A. Yes, sir.

Q. What did he say?

A. He just held it in his hand there in the office.

Q. Did he say that was your mother's will?

A. Yes, sir.

Q. He held up a document. Is that what you are saying?

A. Yes, sir.

Q. Why do you think it was your mother's will?

A. He went to his vault and got it.

Q. And he told you that that was your mother's will?

A. Yes, sir.

Q. Did you recognize anything about the paper? Did it have the blue back on it?

A. Yes, sir.

Q. Well, how did Johnnie Hoppe react?

A. He wanted to set that will aside.

Q. Did he say that?

A. Yes, sir.

Q. Is that the last time you ever saw the will?

A. Yes, sir.

Q. Based on what you know, do you think your mother revoked or destroyed her will?

A. No, sir.

■ This testimony consists of some statements of fact, one statement of opinion and some hearsay. There was no objection to any of it. Under the new Texas Rules of Evidence inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay. Tex.R.Evid. 802. In addition to this direct testimony on the issue of revocation, there was other testimony of a circumstantial nature. Mr. Slatten testified that the Hoppes had expressed clearly their intention to leave everything to Annie and had never mentioned the wills again after they were drawn, nor did they ever indicate a change of mind. Appellant also testified that she always accompanied Mrs. Hoppe to the lawyer's office and never saw Mr. Jones give her the will. Even under the clear and convincing standard this is some evidence that Mrs. Hoppe did not revoke her will. There being no cross-point of error challenging the sufficiency of the evidence to support the jury finding that she did not revoke the will, that question is not before us for decision. Tex.R.Civ.P. 324(c).

We sustain appellant's twelfth point of error, and reverse and render judgment that Martha Hoppe's will be admitted to probate. Appellant's remaining points of error need not be addressed in light of this disposition.